1  Mark Haesloop, Esq. (#88532)
   James M. Brennan, Esq. (#197468)
2  McCRACKEN, BYERS & HAESLOOP, LLP
   1528 So. El Camino Real, Suite 306
3  San Mateo, CA 94402
   Tel.: 650-377-4890; Fax: 650-377-4895
4
5  Attorneys for Schwager Davis, Inc.



E-filing

Filed
JUN 0 9 2005
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCHWAGER DAVIS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> METAL WORLD, INCORPORATED and ) <br> DOES 1-50, ) <br> ) <br> Defendants. ) | Case No.: C05 02353 PVT <br><br> **COMPLAINT FOR BREACH OF CONTRACT AND BREACH OF WARRANTY** |

Plaintiff, Schwager Davis, Inc. ("SDI" or "Plaintiff") alleges:

1.  Plaintiff is and was at all times mentioned herein a corporation under the laws of the State of California, having its principal place of business in the State of California and is a corporation incorporated under the laws of the State of California, having its principal place of business in the State of California.

2.  Plaintiff is informed and believes and thereon alleges that Defendant Metal World, Incorporated ("Metal World" or "Defendant") is a corporation under the laws of Newfoundland, Canada, having its principal place of business in Newfoundland, Canada, and is a corporation incorporated under the laws of Newfoundland, Canada, having its principal place of business in Newfoundland, Canada.

3.  The jurisdiction of this Court over the subject matter of this action is predicated on 28

U.S.C. Section 1332. The amount in controversy exceeds $50,000, exclusive of interest and costs.

4. All plaintiffs reside in the District of Northern California, so this court is the proper venue under U.S.C. Section 1391(a), the contract was executed here, the product was delivered in this district, the product was partially assembled here by Defendant's employees in this district and the product failure and injury occurred in this district.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

5. On February 8, 2003 Plaintiff and Defendant entered into a contract for the construction of four Segment Lifting and Erection Devices ("SLEDs") by executing Purchase Order Number D0001. A true and correct copy of the contract is attached hereto as Exhibit "A".

6. The contract required delivery of four SLEDs, to be built according to the drawings dated December 9, 2002, or per changes to the drawings and specifications as described in Paragraph 3 of the contract, with the final shipment to arrive no later than September 1, 2003.

7. Defendant delivered the SLEDs in a condition that did not comply with the drawings and specifications. The SLEDs required repairs in an amount of $527,739.40 by Plaintiff, and an additional amount of repairs by the general contractor on the project, which were charged to Plaintiff's account, estimated to be $100,000.

8. On or about April 6, 2004 the fourth SLED was load tested, completing the delivery of the goods per the contract, after the $527,739.40 in repairs by Plaintiff and an additional approximately $100,000 in repairs by the project general contractor charged to Plaintiff's account.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT AGAINST DEFENDANT METAL WORLD

9. Plaintiff incorporates each and every allegation of paragraphs 1 through 8 inclusive, as if fully restated herein.

10. Plaintiff alleges that the delivery of the nonconforming goods under the Purchase Order Number D0001, was a breach of that contract, which required delivery of goods that conformed with the drawings and specifications of the buyer. The goods were defective when delivered in that they would not bear the required weight, were welded improperly, and were

McCracken, Byers & Haesloop LLP
1528 So. El Camino Real, Suite 306
San Mateo, California 94402
Tel.: 650-377-4890
Fax: 650-377-4895

otherwise not in conformity with the contract.

11. As a direct result of Defendant's breach, Plaintiff has suffered damages as a result of the breach of contract in the amount of $527,739.40 in repair costs to repair the goods so that they complied with the contract terms. Additional repairs by the project general contractor were charged to Plaintiff's account in an amount estimated to be $100,000, also to Plaintiff's detriment. Whereas Plaintiff prays for judgement as hereinafter set forth.

## SECOND CAUSE OF ACTION FOR BREACH OF WARRANTY
## AGAINST DEFENDANT METAL WORLD

12. Plaintiff incorporates each and every allegation of paragraphs 1 through 8 inclusive, as if fully restated herein.

13. The circumstances of the sale described in the attached Exhibit A were such that Defendant warranted that the goods to be delivered would be fit for their intended use and purpose. This warranty was both expressed and implied.

14. Plaintiff alleges that the delivery of the nonconforming goods under the Purchase Order Number D0001, was a breach of the warranty of merchantability which required delivery of goods that were fit for their intended use and purpose. The goods were defective when delivered in that they would not bear the required weight, were welded improperly, and were otherwise not fit for their intended use and purpose.

15. As a result of Defendant's breach of warranty Plaintiff was forced to expend $527,739.40 in repair costs to repair the goods so that they were fit for their intended use and purpose. Additional repairs by the project general contractor, also required to repair the goods so that they were fit for their intended use and purpose were charged to Plaintiff's account in an amount estimated to be $100,000, also to Plaintiff's detriment.

## PRAYER

WHEREFORE, plaintiff prays for judgment against defendant Metal World as follows:

1. Damages in the sum of $627,739.40 or such amount according to proof as the Court may order;

2.   Costs incurred in bringing the action;

3.   Interest from the date of breach to the date of entry of judgment; and

4.   Such other and further relief as the Court deems proper.

Dated: ~~April~~ JUNE 7, 2005               McCracken, Byers & Haesloop LLP

By: _____
    Mark Haesloop
    Attorneys for Schwager Davis, Inc.

DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure .

Plaintiff consents to the assignment of the matter to a magistrate in the discretion of the Court.



**Schwager Davis, Inc.**
500 Phelan Avenue
San Jose, CA 95112
Tel.: 408-294-5224
Fax: 408-294-8072
www.schwagerdavis.com

## Purchase Order

This number must appear on all packages, invoices, etc.

**D0001**

| Vendor Name: | Metal World, Incorporated | Contact: | Jerry Hutchings |
|---|---|---|---|
| Address: | 863 Torbay Road | Telephone: | (709) 758-8128 |
| City/State: | Torbay, NF Canada    Zip  A1K 1A2 | Fax: | (709) 726-3884 |

| Job: | San Francisco Oakland Bay Bridge Skyway Structures   SLED | Job No.: 202004 | Acct.No.: |
|---|---|---|---|

| DATE OF ORDER: | DATE REQUIRED: | SHIP VIA: | F.O.B.: | TERMS: | RESALE: | Yes: |
|---|---|---|---|---|---|---|
| 2/7/2003 | per schedule | Ocean Freight | Jobsite | Net 30 | | No: |

| Accounting Use Only | QUANTITY ORDERED | UNIT | PLEASE SUPPLY THE FOLLOWING ITEMS | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | 4 | each | SLED (Segment Lifting and Erection Device). Each SLED consists | | |
| | | | of 2 Lifters, 2 Upper Carriages, 2 Lifting Beams, 2 Rear Platforms, | | |
| | | | and one Front Work Platform, per the attached drawings dated | | |
| | | | December 9, 2002. | | |
| | | | Included are approved fabrication drawings, all materials, | | |
| | | | fabrication, painting, and freight to the project site near Oakland, | | |
| | | | California. See the Metal World quotation dated January 3, 2003 | | |
| | | | for additional scope description. | | |
| | | | Monthly progress payments for items fabricated and inspected | | |
| | | | are due and payable in 30 days, minus 10% retainage. Retainage | | |
| | | | is due 30 days after the items arrive at the project site. | | |
| | | | Delivery: The first SLED shall arrive at the project site no later | | |
| | | | than June 15, 2003. The final shippment shall arrive at the project | | |
| | | | site no later than September 1, 2003. | | |
| | | | **Lump Sum Price** | | $737,000.00 |
| | | | This order is subject to the attached Terms and Conditions | | |

1,142,350 CDN

| | | |
|---|---|---|
| Subtotal: | → | $ 737,000.00 |
| Shipping: | → | included |
| Tax: | → | |
| Grand Total: | → | $737,000.00 |

SHIP TO: Company:
Address:
City, State, Zip:
Telephone:
Attention to:

Special Instructions:

Issued by: Guido Schwager

Accepted by: _____   Date: 2/8/2003

PURCHASE ORDER TERMS AND CONDITIONS

1. ACCEPTANCE OF ORDER The parties shall be bound by this order and its terms and conditions when Seller (a) delivers to Buyer any of the goods order, or (b) renders for Buyer any of the services ordered herein. No contract shall exist except as herein above provided.

2. AMENDMENTS No agreement or understanding to modify this contract shall be binding upon Buyer unless in writing and signed by Buyer's authorized agent. All instructions, specifications and drawings submitted to Seller in connection with this order are hereby incorporated and made a part hereof.

3. BUYER CHANGES Buyers reserves the right at any time to make changes to quantities, drawings, specifications, delivery schedules, methods of shipment and packaging. The amount of all additions and reductions to be made to and from the amount of the purchase order price shall be agreed upon in writing by the parties hereto, such agreement not being valid unless signed by an officer or other authorized representative of the Buyer. Prior to issuance of any written change orders, Seller may be required to furnish a written detailed breakdown of costs. Should the parties be unable to reach timely agreement on the amount of the change in price, Seller shall be obligated to make timely delivery of all equipment as Buyer directs, and the parties shall either reach agreement on an equitable adjustment at a later date, or the matter shall be resolved as a dispute, provided, however, that any claim under this clause must be made to Buyer in writing within five (5) days of notice of change.

4. SELLER CHANGES Seller reserves the right to propose changes during the detailing and pre-fabrication process, and Seller shall have the full benefit of savings realized by such changes. However, such changes must be approved by Buyer prior to fabrication, and Seller shall reimburse Buyer for any additional design costs to review such changes.

5. DELIVERY Time is of the essence of this order. If the delivery of goods or rendering of services is not completed by the time promised, Buyer reserves the right, without liability, and in addition to its other rights and remedies, to terminate this order by written notice, effective when mailed to Seller as to goods not yet received or services not yet rendered. Buyer may then purchase substitute goods or services elsewhere. Any provisions herein for delivery of goods or the rendering of services by installment shall not be construed as making any obligation of Seller severable. Buyer shall have no obligation to accept goods shipped C.O.D. without Buyer's written consent, and Seller shall bear all risk with respect to said goods.

6. INSPECTION Goods purchased hereunder are subject to inspection and approval after receipt by Buyer. Buyer reserves the right to reject and refuse acceptance of goods not in strict accordance with Buyer's instructions, specifications and drawings, and Seller's warranty, express or implied. Buyer may at its option either hold rejected items for Seller's instructions and at Seller's risk or return them to Seller at Seller's expense, and Seller shall promptly reimburse Buyer for any and all damages sustained by Buyer as a result. Buyer's right to reject any goods hereunder and to return said goods to Seller shall not be limited to any specific time period. Payment for any goods hereunder shall not constitute acceptance thereof.

7. WARRANTY By accepting this order, Seller hereby warrants that each and every item of goods and services to be furnished hereunder shall be free from defects in material and workmanship, merchantable, and in strict accordance with Buyer's instructions, specifications and drawings. Seller's warranty, and any sample of Seller, and that items furnished hereunder will be fit for the use intended by Buyer. Seller agrees that this warranty shall survive Buyer's acceptance of said goods. Said warranties shall be in addition to any other warranties given to Buyer by Seller. No implied warranties of Seller shall be excluded.

8. PATENTS Seller agrees to indemnify, and forever save Buyer free and harmless of all costs and expenses including reasonable attorney's fees, and undertakes and agrees to defend at Seller's expense all suits, actions, or proceedings in which Buyer, any of Buyer's distributors or dealers, or the users of any of Buyer's products, are made defendants for actual or alleged infringement of any U.S. or foreign letters patent resulting from the use or sale of the items purchased hereunder, except infringement necessarily resulting from adherence to Buyer's specifications or drawings, and Seller further agrees to pay and discharge any and all judgements or decrees which may be rendered in any such suit, action or proceedings against such defendants therein.

9. PRICE Buyer shall not be billed at prices higher than stated on this purchase order unless authorized in writing signed by Buyer. Seller represents that the price charged for the goods or services covered by this order comply with applicable government regulations in effect at the time of quotation, sale, and delivery.
(b) Both the buyer and the seller accept and agree that, although quoted in US Funds, the contract price presented was based on Canadian Funds, and converted into US funds at the international exchange rate that was advertised on the 3rd day of January 2003. (This rate was listed as $1.55 CDN = $1.00 US)
In short, Metal World Inc. shall be remunerated to the amount of $1,142,350.00 Canadian funds. Variances relating from exchange rate fluctuations, to the benefit or detriment of either party, shall not be considered as part of this agreement.

10. TERMS All invoices must be dated no earlier than date of shipment. Buyer's payment obligation for tooling shall not commence until parts produced from such tooling are received and approved by Buyer.

11. COMPLIANCE WITH LAW In accepting this order, Seller represents that it has, and will continue during the performance of this order to comply with the provisions of all Federal, State and local laws and regulations from which liability may accrue to Buyer from any violation thereof. By acceptance hereof, Seller certifies compliance with the Fair Labor Standards Act of 1938 as amended, and with Executive Order Number 11246 in the performance of this contract.

12. TERMINATION BY BUYER Buyer shall have the right to terminate this order in whole or in part by giving written notice thereof to Seller. Upon receipt of such notice, Seller shall, unless the notice directs otherwise, immediately discontinue its work pertaining to this order and the placing of orders for materials, facilities, and supplies, and shall make every reasonable effort to obtain cancellation of all such existing orders or contracts upon terms satisfactory to Buyer. Seller shall thereafter do only such work as may be necessary to preserve and protect work already in progress and to protect materials, plant and equipment on such work or in transit thereto. In case of such termination, it is agreed that Seller shall be entitled to prorate compensation for the unpaid portion of the contract already performed, including materials for which firm contracts have been made and to which Buyer shall be entitled. The foregoing shall be the sole remedy available to Seller in the event of termination of Buyer.

13. PASSAGE OF TITLE Title to the goods purchased hereunder shall pass to Buyer upon Buyer's actual, inhand receipt thereof.

14. INTEREST, FINANCE AND OTHER CHARGES Buyer specifically disclaims, and shall not be liable to Seller for any interest, finance, or service charge, or any other such charge with respect to the goods or services which are the subject of this order.

15. INDEMNITY Seller agrees to defend, indemnify, and forever save Buyer free and harmless of all claims, demands, liability, suits, judgements, costs and expenses, including reasonable attorney's fees, arising out of or connected with this order or the goods which are subject thereof.

16. INSURANCE Seller shall at his sole cost and expense, and before delivery of the equipment hereunder, cause to be issued minimum insurance coverages as set forth below;

a) Worker's Compensation in accordance with the provisions of the applicable Worker's Compensation Law or similar laws in the country, state, territory or province having jurisdiction over the employee and Employer's Liability subject to a limit of liability of $1,000,000 for each occurrence.

b) Commercial General Liability, including Products/Completed Operations Liability and Contractual Liability, subject to a combined single limit of $1,000,000 per occurance for Bodily Injury and Property Damage and a $2,000,000 aggregate.

c) Automobile Liability coverage use of all owned, non-owned and hired vehicles subject to a combined single limit of $1,000,000 per occurrence for Bodily Injury and Property Damage.

Seller shall name Buyer as additional insured on policies required in b) and c). All insurance required herein shall waive underwriter's right at subrogation against Buyer. Certificates of Insurance shall be furnished upon request evidencing the above insurance is in force and that thirty (30) days written notice will be given Buyer prior to any cancellation or restrictive modification of the policies. Seller's insurance shall be regarded as primary insurance to any other applicable insurance maintained by Buyer.

17. CONFLICTING PROVISIONS  Any terms, conditions or provisions of any instrument issued by Seller in connection with the subject matter or this order, which are in addition to or inconsistent with the terms and conditions expressed herein, shall not be binding on Buyer in any manner whatsoever unless Buyer specifically accepts them by signing the instrument in which they are contained.